UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 2:18-cv-14166-ROSENBERG/MAYNARD

JOSEPH J. THOMAS,

    Plaintiff,

v.

THE NORTHWESTERN MUTUAL
LIFE INSURANCE COMPANY,

    Defendant.
_____/

**ORDER DENYING DEFENDANT'S MOTION FOR FINAL SUMMARY
JUDGMENT AND REFERRING CASE FOR A SETTLEMENT CONFERENCE**

This matter is before the Court on Defendant's Motion for Final Summary Judgment [DE 54]. The Court has carefully considered the Motion, Plaintiff's Response [DE 56], Defendant's Reply [DE 60], the arguments of the parties during the Status Conference held on May 7, 2019, and the record, and is otherwise fully advised in the premises. For the reasons set forth below, Defendant's Motion for Final Summary Judgment [DE 54] is **DENIED**.

## I.     UNDISPUTED FACTS

### A.     The Policy

On October 26, 2019, Defendant issued a disability income policy ("the policy") to Plaintiff, a licensed dentist. DE 53 at 1; DE 55 at 1; *see* DE 1-2 at 27-39. The "full benefit" under the policy is $10,233 per month. DE 53 at 1; DE 55 at 1; DE 1-2 at 29. The "initial period" of the policy is until October 26, 2015, but not less than 24 months of benefits. DE 1-2 at 29. The policy provides for disability benefits to be paid for either a total or partial disability. *Id.* at 31.

The policy provides that, until the end of the initial period, Plaintiff "is totally disabled when he is unable to perform the principal duties of his occupation." *Id.* "Occupation" means "the occupation of [Plaintiff] at the time he becomes disabled." *Id.* The policy does not define "principal" or "principal duties." *See generally id.* at 27-39. The full benefit under the policy is payable for each month of total disability. *Id.* at 31.

Under the policy, Plaintiff is partially disabled when he has at least a 20% loss of earned income and is unable "to perform one or more of the principal duties of his occupation" or "to spend as much time at his occupation as he did before the disability started." *Id.* However, until the benefit for partial disability has been payable for 6 months, Plaintiff need not have a 20% loss of earned income if (1) "he is unable to perform one or more principal duties which accounted for at least 20% of the time he spent at his occupation before the disability started," or (2) "he has at least a 20% loss of time spent at his occupation." *Id.*

The benefit payable for each month of partial disability, called the "proportionate benefit," is "intended to compensate for a loss of earned income caused by [Plaintiff's] disability." *Id.* at 31-32. The proportionate-benefit calculation takes into account the full benefit, Plaintiff's loss of earned income, and his base earned income. *Id.* at 32. However, if Plaintiff has at least an 80% loss of earned income, the proportionate benefit becomes the full benefit. *Id.* In addition, for each of the first 6 months for which the proportionate benefit is payable, Plaintiff may choose to receive 50% of the full benefit, rather than the calculated proportionate benefit. *Id.*

The policy defines the phrases "earned income," "base earned income," and "loss of earned income" as follows. Earned income is the total "compensation or income earned by [Plaintiff] from all sources for work performed by him or others under his supervision or direction," minus

2

"normal and customary business expenses." *Id.* Base earned income for the first 12 months of a disability is Plaintiff's average monthly earned income for either "a 12 consecutive month period during the 24 month period before the start or disability" or "any two of the five calendar years before the start of disability," whichever generates the highest average. *Id.* Loss of earned income is Plaintiff's base earned income, minus his earned income for the month for which a benefit is claimed. Loss of earned income "must be caused by the disability for which [a] claim is made." *Id.*

Finally as to the policy language, Defendant "may require proof, including income tax returns, of the amount of [e]arned [i]ncome for periods before and after the start of the disability." *Id.* "Written proof of disability must be given to [Defendant] within 90 days after the end of each monthly period for which benefits are claimed." *Id.* at 34. "If the proof is not given within the 90 days, the claim will not be affected if the proof is given as soon as reasonably possible." *Id.* "In any event, the proof required must be given no later than one year after the end of each monthly period for which benefits are claimed unless [Plaintiff] was legally incapacitated." *Id.*

### B. The Accident and Request for Disability Benefits

Plaintiff suffered an injury to his back when he stepped into a pothole on April 28, 2017. DE 53 at 2; DE 55 at 2; *see* DE 1-2 at 40. On June 8, 2017, he submitted a request for disability benefits under the policy. DE 53 at 3; DE 55 at 2; *see* DE 1-2 at 40-46. He stated in the request that his "dental specialty" was "none = general dentistry" and that, before the accident, he spent 35% of his time on "general dentistry," 30% of his time on crowns and bridges, 25% of his time on office oral surgery, and 10% of his time on hygiene and new patient exams. DE 1-2 at 43. Plaintiff asserted that he suffered excruciating and crippling back pain as a result of the accident

3

that "substantially [and] painfully prevented [him] from being able to sit through clinical dental procedures, reach for instruments, bend over to focus [his] loops/range of vision, [and] maneuver positions for extractions or surgery." *Id.* at 40, 43. He admitted that he had "continued to perform some job duties and/or work in a reduced capacity in [his] occupation" from the date of the accident to the date of the request for benefits. *Id.* at 44.

On August 29, 2017, Plaintiff submitted to Defendant a document titled "Joseph J Thomas D.D.S., PA Procedures By Provider" that listed procedures performed for the period of November 1, 2016, through July 21, 2017. DE 53 at 3; DE 55 at 2; *see* DE 53-2 at 31-40. Each procedure on this list has an associated numeric code, which the parties refer to as an American Dental Association ("ADA") procedure code. *See* DE 53 at 3; DE 55 at 2.

On December 8, 2017, Defendant notified Plaintiff that he had been approved for partial disability benefits for the period of July 27, 2017, through October 27, 2017. DE 53 at 3; DE 55 at 2-3; *see* DE 53-2 at 41-45. The notice stated that October 27 was "the last day for which [Defendant had] support for disability at this time." DE 53-2 at 41. According to Defendant, Plaintiff was "not eligible for total disability benefits at this time, as he ha[d] continued to work during the claimed period of disability." *Id.* at 43. The notice informed Plaintiff that he would be paid 50% of the full benefit because "the base earned income ha[d] not been calculated from the information provided." *Id.* The notice further informed Plaintiff that a determination as to whether a higher benefit was payable would be made when "the additional financial information outlined below is available," and listed W-2 forms for the years 2012 to 2016 and confirmation of his ownership percentage in his dental practice for the years 2014 and 2015. *Id.* According to the notice, Defendant had repeatedly requested "tax returns, both business and personal, from 2012

4

through 2016," and, in early November 2017, had received "returns for 2012 and 2013 . . . [that] did not provide [Defendant] with the employment verification [that Defendant] needed." *Id.* at 44. Defendant stated, however, that it was "able to make reasonable assumptions as to [Plaintiff's] level of work activity pre-disability from the ADA codes [he] provided." *Id.* Defendant paid Plaintiff $15,349.50 for the period of July 27, 2017, through October 27, 2017. DE 53 at 4; DE 55 at 3.

On January 9, 2018, Defendant requested from Plaintiff "a statement over his signature verifying his work activity," "the W-2 forms associated with all income reported on each of his personal returns," and "his business profit and loss statements from July 2017 to the present." DE 53-2 at 46-47.

On March 19, 2018, Defendant notified Plaintiff that he had not yet "provided the W-2 forms for Joseph J Thomas DDS PA from 2012 through 2017, which are needed to calculate [Plaintiff's] base earned income." *Id.* at 48. Defendant further notified Plaintiff that he had not yet provided "a signed statement . . . verifying his work activity." *Id.* Thus, Defendant stated that a determination could not be made as to whether additional benefits were payable. *Id.* at 48-49.

On March 26, 2018, Plaintiff sent Defendant an e-mail with the subject line "My Dental work activity."[1] DE 55-5 at 1. In the e-mail, Plaintiff stated, "I cannot lean, bend, reach to the left, twist, stand or sit and hover, cannot focus my magnifying loops to see the focal trough of treatment field. I cannot Practice Clinical Dentistry." *Id.* He also stated that he used a walker, wore an upper body brace, and "occasionally and intermittently answer[ed] the phones and [did]

---

[1] Defendant did not address the March 26 e-mail and did not respond to Plaintiff's Statement of Fact that he sent the e-mail attached at DE 55-5 to Defendant on March 26. For the purpose of ruling on the instant Summary Judgment Motion, the Court accepts as true Plaintiff's statement that he sent the e-mail on that date. *See* Fed. R. Civ. P. 56(e)(2).

some oral or emergency exams, for a couple hours between laying down in the vacant patient treatment rooms, to rest [his] aching and stiff back." *Id.*

Plaintiff would later testify at deposition that, after the accident, he continued to take radiographs, perform examinations and oral cancer screenings, and give oral hygiene instructions. DE 53-1 at 40, 80, 104, 108. He stated, however, that he "cannot practice clinical dentistry" because he "cannot lean, bend, reach to the left, twist and stand, sit, hover, cannot focus with [his] magnifying loops to see through the focal trough." *Id.* at 155; *see also id.* at 355.

## II. PROCEDURAL HISTORY

Plaintiff filed this action in the Nineteenth Judicial Circuit in and for Indian River County, Florida on March 28, 2018, raising a breach-of-contract claim and miscellaneous claims for bad faith in the resolution of his request for disability benefits. DE 1-2 at 2-26. Plaintiff alleged that he was totally disabled as a result of the accident and that Defendant had breached the policy by failing to pay him the full benefit. *Id.* at 5, 9-11. Plaintiff alternatively alleged that, if he was partially disabled, Defendant had breached the policy in determining the amount of benefit payments. *Id.* at 8-10. Regardless of whether Plaintiff was deemed totally or partially disabled, he alleged that Defendant had breached the policy by discontinuing benefit payments after three months. *Id.* at 5, 11-12.

Defendant removed the case to this Court in May 2018 under this Court's diversity jurisdiction. DE 1. This Court dismissed without prejudice Plaintiff's bad-faith claims as premature. DE 22. Defendant now moves for final summary judgment on Plaintiff's breach-of-contract claim. DE 54.

6

## III. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If the movant meets this burden, the burden shifts to the non-moving party to come forward with specific facts showing that there is a genuine issue for trial. *Shaw v. City of Selma*, 884 F.3d 1093, 1098 (11th Cir. 2018).

"A factual dispute is 'material' if it would affect the outcome of the suit under the governing law, and 'genuine' if a reasonable trier of fact could return judgment for the non-moving party." *Miccosukee Tribe of Indians of Fla. v. United States*, 516 F.3d 1235, 1243 (11th Cir. 2008). When deciding a summary judgment motion, a court views the evidence in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Furcron v. Mail Ctrs. Plus, LLC*, 843 F.3d 1295, 1304 (11th Cir. 2016). The court does not weigh conflicting evidence or make credibility determinations. *Id.*

## IV. ANALYSIS

The Court turns first to Defendant's arguments regarding whether Plaintiff suffered a total disability. Defendant argues that Plaintiff was not totally disabled because he continued "to perform some of his job duties and continued to work in a reduced capacity in his occupation" as a "general dentist." DE 54 at 3; DE 60 at 1. Defendant points to Plaintiff's deposition testimony that he was able to complete duties such as performing examinations and oral cancer screenings, taking radiographs, and giving oral hygiene instructions. DE 54 at 3, 5; DE 60 at 1, 4. Defendant asserts that these activities are "at least some of the principal duties of [Plaintiff's] occupation,"

7

and that Plaintiff cannot "credibly argue that these duties are not 'principal' ones for a general dentist." DE 54 at 5; DE 60 at 1, 4.

The Court notes again that the policy does not define "principal" or "principal duties," and Defendant points to no authority to provide a definition of that word or phrase. A common definition of the word "principal" is first or highest in rank or importance. *See* The American Heritage Dictionary of the English Language (5th ed. 2011) (defining "principal" as "[f]irst or highest in rank or importance" and as synonymous with "chief").

According to Plaintiff's June 2017 request for disability payments, before the accident, he spent 35% of his time on "general dentistry," 30% of his time on crowns and bridges, 25% of his time on office oral surgery, and 10% of his time on hygiene and new patient exams. DE 1-2 at 43. It is unclear from the record precisely what duties fall into the category of "general dentistry" or what duties are considered principal ones of a "general dentist." Evidence before the Court indicates that, after the accident, Plaintiff could no longer perform dental procedures or surgeries because he was unable to bend, lean, reach for instruments, or sit for extended periods of time. *See id.* at 40, 43; DE 53-1 at 155; DE 55-5 at 1. Viewing the evidence in the light most favorable to Plaintiff, the Court cannot conclude that any of the duties that Plaintiff continued to perform after the accident were "the principal duties of his occupation." The Court can conclude only that Plaintiff was able to continue at least 10% of his pre-accident duties, consisting of hygiene and new patient exams.

Defendant compares this case to *Socas v. Nw. Mut. Life Ins. Co.*, a case in which a Court in this District concluded that a dentist was not totally disabled because there was "too much continuity between [her] work before and after [her] automobile accident to make a finding of

8

'total disability.'" *See* 829 F. Supp. 2d 1262, 1271 (S.D. Fla. 2011). In *Socas*, the dentist's pre-accident duties were of two types: general dentistry and "specialized, more complex dental procedures" such as oral surgery, surgical and non-surgical periodontics, and surgical and non-surgical endodontics. *Id.* at 1268, 1271. After the accident, she continued to practice general, non-surgical dentistry and performed some crown and bridge work, oral surgery, periodontics, and endodontics. *Id.* at 1268, 1271. Thus, the Court concluded that she was able to perform "most or the majority of" her pre-accident duties. *Id.* at 1270-71. The Court also noted that she had testified at deposition that she was only "partially disabled from being a general dentist" and that "the only duties that she [could] no longer perform involve[d] surgical procedures which require[d] that she spend extended periods in a hunched-over posture." *Id.* at 1271-72.

The facts in *Socas*—a case in which the dentist could perform most of her pre-accident duties, albeit on a limited basis—are factually distinguishable from the evidence presented here. The evidence indicates that Plaintiff could not perform office oral surgery, crowns, or bridges, which collectively accounted for 55% of his pre-accident work time. Additionally, it is unclear how much of the 35% of pre-accident time that he spent on "general dentistry" was attributable to the procedures that he maintained he could not perform after the accident. Again, the Court can conclude from this record only that he was able to continue the hygiene and exam duties that accounted for at least 10% of his pre-accident time.

To the extent that Defendant relies on the procedures listed by ADA codes on the document titled "Joseph J Thomas D.D.S., PA Procedures By Provider" to establish Plaintiff's pre- or post-accident duties, the Court notes that the document lists procedures provided at Plaintiff's dental practice, and not necessarily procedures that Plaintiff himself provided. *See* DE 53-2 at

9

31-40. Plaintiff testified that dentists who were volunteers or independent contractors assisted at his dental practice at various times. *See, e.g.*, DE 53-1 at 25-27, 30, 35-39, 48-52. The Court cannot determine which procedures were provided by these other dentists.

If Plaintiff was totally disabled, a genuine issue of material fact also exists as to the duration of that total disability. The record reflects that, in response to Defendant's requests for an update as to his work activity, Plaintiff sent the March 26, 2018 e-mail stating that he occasionally could answer the phones and perform some exams, but that he remained unable to "lean, bend, reach to the left, twist, stand or sit and hover." *See* DE 53-2 at 48; DE 55-5 at 1. Thus, there is evidence to indicate that, up to the time that Plaintiff filed this lawsuit, he continued to suffer the same work restrictions that he had identified in his June 2017 request for disability benefits.

Finally, to the extent that it may be argued that the March 26 e-mail was not timely proof for a claim of total disability for as far back as late-October 2017, the Court notes the policy language that, if proof of disability is not given within 90 days after the end of each monthly period for which benefits are claimed, "the claim will not be affected if the proof is given as soon as reasonably possible." *See* DE 1-2 at 34. The parties have not briefed, and the Court will not speculate, as to whether Plaintiff's purported proof of continuing total disability was "given as soon as reasonably possible."

Viewing the evidence in the light most favorable to Plaintiff, the Court concludes that there are genuine issues of material fact as to whether Plaintiff suffered a total disability as a result of the accident and as to the duration of any total disability. Thus, final summary judgment is improper.

The parties have made alternative arguments as to whether, if Plaintiff was partially disabled, Defendant paid the appropriate proportionate benefit for the appropriate duration of time. However, Defendant has not sought partial summary judgment, and final summary judgment is denied for the reasons stated above. *See* DE 54 at 14 (requesting that the Court grant final summary judgment for Defendant). Consequently, the Court need not reach the alternative arguments regarding partial disability.

## V. CONCLUSION

For the foregoing reasons, Defendant's Motion for Final Summary Judgment [DE 54] is **DENIED**.

This matter is referred to Magistrate Judge William Matthewman for a Settlement Conference to take place on Monday, June 3, 2019. The parties will receive further information concerning the Settlement Conference from Judge Matthewman by separate Order.

**DONE and ORDERED** in Chambers, West Palm Beach, Florida, this 30th day of May, 2019.

_____
ROBIN L. ROSENBERG
UNITED STATES DISTRICT JUDGE

Copies furnished to: Counsel of Record